## Davis *et ux. versus* Zimmerman *et al.*

1. Mrs. Davis bought a horse in West Virginia (where the common law as to husband and wife prevailed), to be paid for from her share of her father's estate in Pennsylvania. Her note for the purchase-money was taken to the vendor by her husband and the horse delivered to him; being in his possession in Pennsylvania it was sold under an execution against him to the creditor; the wife afterwards paid the note from her separate estate. *Held*, that the horse had become the property of the husband on its delivery to him and was liable to be seized for his debt.

2. The mere delivery of the horse to the husband for the wife, without any act or declaration by him, was not a waiver of his marital rights nor evidence of his assent from which the jury could find it.

3. The case was to be determined by the rules of the common law.

November 15th 1870. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Greene county:* Of October and November Term 1870, No. 114.

This was an action of replevin commenced April 28th 1868, for a mare, by James Davis and Phœbe his wife against Mary

[Davis v. Zimmerman.]

Zimmerman and John Zimmerman. The mare was levied on and sold under an execution against James Davis at the suit of the defendants, and was bought by them. Mrs. Davis alleged that the mare was her separate property, and brought this replevin for its recovery.

On the trial, June 15th 1870, before Gilmore, P. J., the following facts were agreed on:—

1. That Mrs. Davis bought the horse of Mrs. Dollison, and was to pay for it when she got the money from her father's estate; that she did get the money from her father's executors on the day of the arbitration of this case, and paid for the horse with the *identical* money she got from her father's executors; that the note given for the purchase-money of the horse was carried to Mrs. Dollison by the husband of Mrs. Davis, and that the horse was delivered to Davis by Mrs. Dollison for Mrs. Davis, the contract made and the horse delivered in West Virginia, and the money paid in Pennsylvania—and the money she paid for the horse was derived from an estate in Pennsylvania.

2. That the judgment against Davis on which the horse was sold was regular, and that execution was issued thereon from before Justice Webb; that the horse was seized within the state of Pennsylvania and sold regularly before the payment of the note given for the horse by Mrs. Davis.

The plaintiffs asked the court to charge:—

" That the jury may find from the evidence, as agreed upon in this case, that the horse in controversy was bought and paid for by the female plaintiff with her own separate money, which her husband had never reduced to possession, and by moneys over which he had no control, and that the husband agreed for a valuable consideration, prior to the purchase by the wife, that the said horse should remain the property of the female plaintiff, and that by such agreement he released all right of property in said horse; that the horse was delivered to the female plaintiff; that the possession continued in the female plaintiff; and if they so find the facts, such a purchase and delivery of the horse to the female plaintiff would vest in her a good legal title to the property in controversy, and the husband and his execution-creditors are estopped from setting up any title to the property, and the plaintiff is entitled to recover."

The court charged:—

" Our refusal to affirm the plaintiffs' point, which you have just heard read and answered, comprises the whole case. When this contract for the sale of this horse was made in West Virginia, the law there regulating the rights of husband and wife was the same as in our state before the passage of the Act of 1848. The rights existing in this relation were governed by the common law as respects personal property. The possession by the husband (how-

ever it might be understood otherwise) gave the property at once to the husband. The fact of possession *nolens volens* invested him with the property in the article."

The verdict was for the defendants.

The plaintiffs took out a writ of error, and assigned for error the refusal to affirm their point, and the charge.

*G. W. E. Waddell* and *A. A. Purman*, for plaintiffs in error.—In equity, a married woman, before the Act of 1848, was allowed to own property for her separate use, free from the debts, &c., of her husband: 2 Story's Eq., § 1368; Livingston *v.* Livingston, 2 Johns. Ch. R. 539; Glancy's Husband and Wife 251, 252; 2 Kent's Com. 147; Arundell *v.* Phipps, 10 Ves. 144–149; Griffith *v.* Griffith, 5 B. Monroe 115; Frarey *v.* Booth, 4 Am. Law Reg. N. S. 142. And can acquire it by agreement with her husband: McKennan *v.* Phillips, 6 Whart. 576; 2 Kent's Com. 147; 1 Bac. Abr. tit. *Baron and Feme*, M. 508; Jamison *v.* Brady, 6 S. & R. 466; 2 Story's Eq., § 1368–1372; 1 Fonbl. Eq., b. 1, ch. 2, note n; Harvey *v.* Harvey, 1 P. Wms. 125–126; Bradish *v.* Gibbs, 3 Johns. Ch. R. 523, 540; Sidler *v.* George, 4 Rawle 469. The husband may agree with his wife that if she will purchase property with her own money it shall be for her and for her own use, and when so purchased it is exempt from seizure and sale by his execution-creditors: Dennison *v.* Nigh, 2 Watts 90; Hulme *v.* Tennant, 1 Bro. C. C. 16; 1 Leading Cases in Equity 389–414; Smethurst *v.* Thurston, Brightly's R. 127; Timbers *v.* Katz, 6 W. & S. 290; Harvey *v.* Harvey, 1 P. Wms. 125; Rolfe *v.* Budder, Bunb. 187; Bennet *v.* Davis, 2 P. Wms. 316; Rich *v.* Cockel, 9 Ves. 369; Parker *v.* Brooks, Id. 583; Glancy's Husband and Wife 256–259; Gamble's Estate, 1 Pars. R. 489.

*Wyly & Buchanan*, for defendants in error.—A wife's chose in action and chattels, before the Act of 1848, passed to the husband: Timbers *v.* Katz, 6 W. & S. 281; Gickers *v.* Martin, 14 Wright 138; 2 Black. Com. 435; Glancy's Husband and Wife 1–4; Smith on Contracts 298. Declarations of trust in favor of a wife should be narrowly scanned: 1 Barr 329; Gochenaur's Estate, 11 Harris 463.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—This was an action of replevin by husband and wife, in right of the wife, for a bay mare which the defendants had purchased at a constable's sale as the property of the husband. The plaintiffs reside in West Virginia, and it was admitted, on the trial in the court below, that the wife bought the horse in that state, and was to pay for him when she got the money from her father's estate in Pennsylvania; that the note given for the

[Davis *v.* Zimmerman.]

purchase-money was carried by the husband to the vendor, who delivered the horse to him for the wife; that subsequently to the purchase the horse was seized in this state upon an execution issued on a judgment against the husband before a justice of the peace, and regularly sold to the defendants before the payment of the note given for the price; and that after the commencement of this action the wife paid for the horse with the money she got from the executors of her father's estate. It was also shown on the trial that at the time of the purchase of the horse, and its seizure and sale by the constable, the rights of husband and wife in West Virginia, in relation to personal property, were governed and controlled by the rules of the common law; and if the personal property of the wife was levied on and sold for the husband's debts prior to the adoption of the Code which went into effect on the 1st day of April 1869, the purchaser would acquire a good title thereto as against the wife.

The plaintiffs requested the court to charge: That the jury may find from the evidence, as agreed upon in this case, that the horse in controversy was bought and paid for by the wife, with her own separate money, which her husband had never reduced to possession, and over which he had no control, and that the husband agreed for a valuable consideration, prior to the purchase by the wife, that the horse should remain the property of the wife, and that by such agreement he released all right of property in said horse, that the horse was delivered to the wife, that the possession continued in the wife, and that if the jury so find the facts, such a purchase and delivery of the horse to the wife would vest in her a good legal title to the property in controversy, and the husband and his execution-creditors are estopped from setting up any title thereto, and the plaintiffs are entitled to recover. The court refused to charge as requested, and instructed the jury that when the contract for the sale of the horse was made in West Virginia, the law there regulating the rights of husband and wife was the same as in our state before the passage of the Act of 1848. The rights existing in this relation were governed by the common law as respects personal property. The possession by the husband (however it might be understood otherwise) gave the property at once to the husband. The fact of possession *nolens volens* invested him with the property in the article.

Did the court err, as alleged by the plaintiffs, in refusing to charge as requested, and in the instruction given to the jury? It is clear that, under the evidence, there was no error in the refusal of the court to give the instruction prayed for. The facts agreed upon by the parties do not show that the husband consented to waive his marital rights, or that he agreed that the horse should be and remain the property of his wife, and there is nothing in the admitted facts from which such waiver or agreement can be

[Davis *v.* Zimmerman.]

fairly inferred. The fact that the horse was delivered to the husband for the wife, without any act or declaration on his part, was not a waiver of his rights, nor was it any such evidence of his assent that it should be and remain her property as would justify the jury in finding it. We are therefore relieved from the necessity of determining whether by the common law a husband could make a valid and binding agreement with the wife, so as to protect her chattels in possession from liability to seizure and sale for his debts. The case falls clearly within the common law, unaffected by any waiver of the husband's rights, and must be determined by its well-established rules; and it is horn-book law that by marriage the husband becomes the immediate and absolute owner of the personal property of the wife, which she has in possession at the time of the marriage in her own right, and it never can again revest in the wife or her representatives. She can acquire no personal property during coverture, and if she obtains any by gift or otherwise, it becomes immediately, by operation of law, without any act on his part, the property of the husband. Her acts of ownership are his acts of ownership, and her possession is his possession, and so is the property. It follows that upon the delivery of the horse in question to the husband for his wife, it became immediately the property of the husband, liable to be seized and sold for his debts.

Judgment affirmed.